Filed 3/12/24  In re A.H. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.H. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E082154 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ2100634) |
| v. | OPINION |
| K.P., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mona M. Nemat, Judge. Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Julie K. Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

K.P. (mother) appeals from the juvenile court's order terminating her parental rights to her daughters, A.H. and A.S.H., who are now almost seven and almost two and one-half years old, respectively. (See Welf. & Inst. Code,[1] § 366.26.) In October 2021, the juvenile court issued protective custody warrants (§ 340) for both children after A.S.H. tested positive for opiates at birth. Neither mother nor O.H. (father) made meaningful progress in the ensuing dependency proceedings, as reflected in their withdrawal of their challenge to the court's order setting the permanent plan selection and implementation hearing (.26 hearing). Further, mother disappeared for the six months preceding the .26 hearing and neither parent visited the girls, who were thriving in the care of the prospective adoptive parents, their paternal grandparents.

Now, on appeal, only mother challenges the termination order and solely on grounds the Riverside County Department of Public Social Services (DPSS) did not satisfy a duty to ask two extended paternal relatives whether A.H. and A.S.H. might qualify as Indian children under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California law. (Welf. & Inst. Code, § 224.2, subd. (b).) As we explain, failure to meet such a duty, assuming arguendo it applied, was harmless error. We therefore affirm the juvenile court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

Because mother contests only the adequacy of DPSS's ICWA inquiry, we limit our background discussion accordingly.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

In investigating a referral the day after A.S.H. was born, DPSS inquired regarding A.H. and A.S.H.'s potential Native American ancestry, which both parents denied. The children entered DPSS's care under protective custody warrants, first A.S.H. and then A.H. after the parents initially absconded with her. At the ensuing detention hearing, the court found DPSS's ICWA inquiry adequate to date and that ICWA did not apply.

In follow-up investigation a week later, the parents again denied Indian heritage. The parents submitted signed Judicial Council Forms, form ICWA-020 to this effect at the next hearing in November 2021, and the court noted on the record the parents' responses on the forms.

The juvenile court sustained DPSS's failure-to-protect allegations (§ 300, subd. (b)(1)) at the jurisdiction hearing in March 2022. The court also found that DPSS's ICWA inquiry was sufficient, ICWA did not apply, and the girls were not Indian children. The parents denied Native American ancestry in further DPSS inquiries, and the juvenile court made corresponding findings.

Meanwhile, the children were eventually placed with their paternal grandparents (hereafter paternal grandmother and paternal grandfather). DPSS asked paternal grandmother whether father had any Native American ancestry, which she denied. She also reported she was born outside the United States and was of Hispanic origin, one of seven siblings. DPSS's social history report did not specify paternal grandmother's country of birth, but she was raised there by her grandmother when her parents moved elsewhere to work. Paternal grandmother also reported that her mother and a sibling still

3

reside in that country, while other siblings live in the United States; her father was deceased. Paternal grandmother described her relationship with her husband, the girls' paternal grandfather, as "good" and marked by "great communication."

Paternal grandfather similarly described himself as being of Hispanic origin and born abroad, one of nine siblings. Half his siblings still resided outside of the United States in an unspecified country or countries, and both his parents were deceased. He lauded paternal grandmother as "a great wife," with whom he had "a good relationship," having been together for 39 years, during which they resolved issues "by talking things through." DPSS did not ask paternal grandfather or a paternal aunt whom DPSS interviewed, one of father's four siblings, whether father, A.H., or A.S.H. had any Native American ancestry.

At the .26 hearing, the juvenile court found the parents had not overcome the problems leading to the children's dependency, no likelihood they would do so, and that A.H. and A.S.H. were adoptable. The court severed mother's and father's parental rights, freed the girls for adoption, and mother now appeals.

## DISCUSSION

Under ICWA, an "Indian child" is a minor who is a tribal member or has birth parents who are members of an Indian tribe recognized under federal law.[2] Specifically,

---

[2] Because ICWA (enacted in the 1970's) and corresponding California statutes use the term "Indian," we generally do the same for consistency. Many stakeholders and policymakers now prefer other identifying language "such as 'Native American' or 'indigenous'" (*In re Benjamin M*. (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M*.), which we also occasionally use.

4

an "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) California law uses the same definition. (Welf. & Inst. Code, § 224.1, subd. (a).) Under that definition, qualifying tribes are those eligible for services from the Secretary of the Interior (25 U.S.C. § 1903(8)), reflecting the unique relationship between the federal government and indigenous tribes within the United States. (See *In re Wanomi P.* (1989) 216 Cal.App.3d 156, 166-168 [Canadian tribes are not federally recognized for ICWA to apply]; accord, e.g., *In re Petition to Adopt T.I.S.* (Ill. App. 1991) 586 N.E.2d 690, 693 [ICWA inapplicable where Chippewa band was "not located in the United States"; no equal protection violation].)

Mother contends California law implementing ICWA—in particular section 224.2—required DPSS to inquire of the children's paternal grandfather and paternal aunt whether A.H. and A.S.H. may be Indian children.[3]

Whether a duty of inquiry regarding potential Native American ancestry includes extended family members when, as here, the juvenile court has issued a warrant for the child to be taken into protective custody (§ 340) is a question currently pending before our Supreme Court. (*In re Ja.O.* (2023) 91 Cal.App.5th 672 [lead case], rev. granted

---

[3] Mother does not assert any inquiry error as to her family, nor would the record support such a claim. She reported no Indian ancestry, was born into a single parent home, met her father once when she was nine years old, and her mother was deceased. She had a younger half brother, but gave no indication she was in contact with him or other extended family members, if any.

July 26, 2023, S280572.) This court is divided on the issue. (Compare *ibid*. [holding there is no such duty]; *In re Andres R*. (2023) 94 Cal.App.5th 828 [same], rev. granted Nov. 15, 2023, S282054; *In re Robert F.* (2023) 90 Cal.App.5th 492 [same], rev. granted July 26, 2023, S279743, with *In re Delila D*. (2023) 93 Cal.App.5th 953 [inquiry duty applies], rev. granted Sept. 27, 2023, S281447; see also *In re L.B.* (2023) 98 Cal.App.5th 512 [agreeing with *In re Delila D.*]; *In re C.L.* (2023) 96 Cal.App.5th 377 [same]; *In re Jerry R*. (2023) 95 Cal.App.5th 388 [same]; *In re V.C.* (2023) 95 Cal.App.5th 251 [same]; but see *In re Adrian L.* (2022) 86 Cal.App.5th 342, 357-358 [conc. opn. of Kelley, J., finding no duty].)

The question is moot here for lack of prejudice. The standard for assessing prejudice for ICWA-related inquiry error is itself also under review by the high court. (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 777-782, rev. granted Sept. 21, 2022, S275578).) After inquiring of paternal grandmother, any error here in not asking additional paternal extended relatives about potential Indian heritage was harmless under this court's precedents. (See *In re A.C.* (2021) 65 Cal.App.5th 1060, 1070 [harmless where no parental claim or suggestion of Indian ancestry]; see *Benjamin M.*, *supra*, 70 Cal.App.5th 735 [discussed *post*]; see also, e.g., *In re D.B.* (2022) 87 Cal.App.5th 239, 245, fn. 5 [applying *Benjamin M.*).)

Under *Benjamin M.*, alleged agency error in "fail[ing] to ask extended family members about Indian ancestry would be prejudicial if 'the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the

6

child is an Indian child.'" (*In re Darian R.* (2022) 75 Cal.App.5th 502, 509, quoting *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) In reviewing the record as a whole, however, it may be "obvious that additional information would not have been meaningful to the inquiry." (*Benjamin M.*, at p. 743.) "This might occur where the evidence already uncovered in the initial inquiry was sufficient for a reliable determination." (*Ibid.*)

That is the case here. Mother is certainly correct that paternal grandfather and a paternal aunt were readily available to DPSS for further inquiry regarding father's—and hence the children's—potential Indian ancestry. The department had contacted and asked them about other matters. Nevertheless, this omitted opportunity was not likely to "bear meaningfully" under *Benjamin M.* on A.H's. and A.S.H.'s Indian child status. Father and mother repeatedly denied throughout the proceedings that the children had any Indian tribal background on either side of the family. Paternal grandmother confirmed as much as to father. Additionally, both of father's parents were born outside of the United States, identified themselves as being of Hispanic origin, and were raised some portion of their lives abroad in families with substantial and continuing home country ties. Together, these intertwined facts added weight to consistent family denials of Indian heritage, particularly the requisite geographic, Native American tribal background. (See 25 U.S.C. § 1903(8).)

It is of course possible that a parent, grandparent, or other individual may not know much of his or her ancestry, while others in the family are better informed. Or a parent may not be available at all. Thus, in *Benjamin M.*, this court found prejudicial

7

error in failure to ask the father's brother about potential Indian ancestry. (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 744-745 ["Father's brother's knowledge of his own Indian status," if any, "would be suggestive of Father's status"].) There, however, the agency asked *no one* on the father's side—neither the father nor any extended family members— about potential Native American heritage. The father could not be located and had never appeared in the proceedings, yet despite contact with the father's brother and sister-in-law, the agency made no inquiry of either. (*Id.* at pp. 740, 744-745.) Similar circumstances are absent here.

Fractured family relationships can highlight a need for agency contact with a particular extended family member or members. (See *In re G.H.* (2022) 84 Cal.App.5th 15, 31 [the father was estranged from his mother, the child's paternal grandmother, who was "the sole surviving conduit to the family's reputed Native American background"]; see also *In re M.B.* (2022) 80 Cal.App.5th 617, 622, 627-630 [the mother identified her paternal grandfather as "definitely Indian," but was estranged from that side of family; inadequate agency attempts to contact maternal extended family members not rectified by postjudgment efforts].)

Here, in contrast, paternal grandmother confirmed father's denial of any Native American ancestry and father's family maintained positive ongoing communication with each other. Paternal grandmother and grandfather especially had "great communication" with one another and kept up "good relationship[s]" with family members, including their children, whom paternal grandmother reported she saw "often and has a good

8

relationship with each one of them." Father also described a good relationship with his siblings—including the children's paternal aunt—and with the paternal grandparents; in fact, he wanted his parents to have custody of A.H. and A.S.H.

Against this backdrop, even assuming DPSS should have asked paternal grandfather and the paternal aunt about family Native American history after father and paternal grandmother said there was none, failing to further inquire of paternal grandmother's husband and her daughter on this topic was harmless under *Benjamin M.* With paternal grandmother at the center of good relations in father's extended family, including as a great communicator, it is likely that asking paternal grandmother about her son's ancestry was as good as having also asked paternal grandfather and the paternal aunt. On the foregoing record, the probability of obtaining additional "meaningful information" was remote at best. (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 743-744.) Far more likely was a superfluous confirmation of paternal grandmother's confirmation of father's denial. This conclusion is all but ironclad given father's ancestral origins outside the United States. On that basis, we affirm the order terminating parental rights.

9

**DISPOSITION**

The juvenile court's order terminating parental rights is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
                                                                    Acting P. J.

We concur:

CODRINGTON
                    J.

FIELDS
                    J.